UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ROBERTA A. DeANGELIS
ACTING UNITED STATES TRUSTEE, REGION 3
Mitchell B. Hausman, Esquire (MH 1464)
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Case No. 07-25203(RG) |
| | : | |
| Hoshyar Naghshbandi, | : | Chapter 7 |
| | : | The Honorable Rosemary Gambardella |
| Debtor | : | |
| | : | |
| Roberta DeAngelis | : | |
| Acting United States Trustee, | : | Adversary Proceeding No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| Hoshyar Naghshbandi, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE**

Roberta A. DeAngelis, Acting United States Trustee for the District of New Jersey ("UST"), by and through the undersigned attorney, as and for her complaint objecting to the discharge of Hoshyar Naghshbandi ("Debtor"), respectfully alleges as follows:

**JURISDICTION AND VENUE**

1. This is an adversary proceeding brought pursuant to 11 U.S.C. § 727(a)(5), (2), (3) and (4), and Rule 7001 of the Federal Rules of Bankruptcy Procedure to deny the Debtor his discharge.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. § 1409(a).

**ALLEGATIONS COMMON TO ALL COUNTS**

*A. The Debtor's Petition, Schedules, and Statement of Financial Affairs*

4. The Debtor commenced this case with the filing of a voluntary petition under Chapter 7 of the Bankruptcy Code on October 18, 2007.

5. On October 22, 2007, Nancy Isaacson, Esquire, was appointed interim trustee of the estate of the Debtor, and pursuant to 11 U.S.C. § 702(d), became the permanent trustee.

6. The Debtor's petition indicates that he currently resides at 1070 Palisade Avenue, Fort Lee, New Jersey.

7. Schedule A filed in support of the Debtor's petition states that the Debtor has no interest in real property.

8. On information and belief, the 1070 Palisade Avenue residence is owned solely by the Debtor's wife, Sevil Naghshbandi, and was purchased in February of 2005.

9. Amended Schedule B filed in support of the Debtor's Petition lists personal property totaling $6,527.00 comprised of a checking account valued at $100.00, clothing valued at $1,000.00, a 2007 IRS tax refund valued at $5,427.00, and stock interest in three incorporated or unincorporated businesses: Cyrus, Inc. ("Cyrus") valued at $0.00; Romina Designs

("Romina") valued at $0.00; and International Resource Marketing Corporation ("IRMC") valued at $0.00.

10. Schedule D filed in support of the petition discloses no creditors holding secured claims.

11. Schedule E filed in support of the petition discloses no priority unsecured debts owed to any taxing authority.

12. Schedule F filed in support of the petition lists $916,599.76 in nonpriority unsecured debt attributable to personal loans, credit cards, revolving charges, leases, legal services, accounting services and gem purchases.

13. Upon information and belief, the Debtor received a Bachelor of Science degree in Physics in 1994 from an educational institution in Tehran.

14. On information and belief, between 1995 through 1997 the Debtor studied at the Unification Theological Seminary for a Master of Science degree in Divinity.

15. According to Schedule I, at the time of filing, the Debtor had been employed for 5 months as a manager by Le Paveh, Ltd. ("Le Paveh") with an address of 16 Penn Plaza, New York, New York.

16. Schedule I further asserts that the Debtor earns an average monthly income of $2,400.00 per month with no deductions being taken from his income by his employer.

17. Schedule I further discloses that the Debtor's spouse has no source of income and the Debtor has two minor sons and a minor daughter.

18. The Debtor's 2004 Income Tax Return identifies Mrs. Naghshbandi's occupation as "Homemaker" and the Debtor's occupation as that of "Jeweler".

19. On information and belief, the Debtor's employer, Le Paveh, is a jewelry contracting company owned partially by the Debtor's wife, Sevil Naghshbandi, and Kevin Smith that was incorporated in June of 2007.

20. Although Schedule I indicates that Sevil Naghshbandi is not employed; the Debtor testified that, as of March 2008, she receives income working as a teacher at Jin-A Child Care Center and also from part-time work at Le Paveh.

21. Schedule J filed in support of the petition lists a total of $7,515.00 in monthly expenses; subtracting this figure from the Debtor's monthly take-home pay, Schedule J asserts that the Debtor has a monthly shortfall of ($5,115.00).

22. The schedules filed in support of his petition reflect the Debtor's conformed signature under the following statement: "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 20 sheets, and they are true and correct to the best of my knowledge, information, and belief."

23. In ¶ 1 of Debtor's Statement of Financial Affairs, the Debtor discloses that he had a gross income from employment or the operation of a business totaling $15,946.80 in 2007, $ 81,503.29 in 2006 and $84,500.00 in 2005.

24. In ¶ 3 of the Statement of Financial Affairs, the Debtor states that he made no payments within one year immediately preceding the petition date to or for the benefit of creditors who were insiders.

25. In ¶ 4 of the Statement of Financial Affairs, the Debtor lists three lawsuits: a lawsuit by General Electric Capital Corporation involving a complaint on a lease; a lawsuit involving Kahan Jewelry corporation involving a personal loan on corporate debt; and a lawsuit by Amir Gem Corp., involving goods sold and a personal guarantee.

26. In ¶ 8 of the Statement of Financial Affairs, the Debtor states that he had no losses from fire, theft, other casualty or gambling within one year immediately preceding the Petition.

27. In ¶ 10 of the Statement of Financial Affairs, the Debtor states that he had no transfers.

28. In ¶ 18 of the Statement of Financial Affairs the Debtor lists that within the six years preceding the filing of the petition he had an interest in the following businesses: Cyrus, Romina, IRMC, and Integral Business Network ("Integral").

29. The Debtor signed a sworn statement declaring under penalty of perjury that the answers contained in the Statement of Financial Affairs are true and correct.

30. The docket reflects a first meeting of creditors pursuant to 11 U.S.C. § 341(a) was conducted on November 19, 2007.

31. The docket reflects the last day to oppose discharge or dischargeability was January 18, 2008.

32. The docket reflects that on December 18, 2007, the UST filed a motion to extend time to object to discharge which was entered by the court on February 26, 2008 extending the time to object to discharge to May 18, 2008.

33. Subsequent consent orders and motions have been entered from time to time to extend deadlines under 11 U.S.C. 707 and 11 U.S.C. 727 most recently to January 16, 2009.

34. As disclosed on the Debtor's Bankruptcy Petition, the Debtor is the owner of Cyrus.

35. The Debtor's Petition indicates that Cyrus filed for bankruptcy protection in the Southern District of New York on November 8, 2006, under assigned case no. 06-12668.

36. Cyrus originally filed a Petition under Chapter 11 of the Bankruptcy Code and converted to Chapter 7 on May 9, 2007.

37. Mr. Ian Gazes was appointed Chapter 7 trustee in the Cyrus bankruptcy case ("Cyrus trustee").

## B. *The UST's Request for Information from the Debtor*

38. On December 20, 2007, the UST forwarded a letter to Debtor's counsel, Rick Aaron Steinberg, Esq. ("Debtor's Counsel"), requesting the following documents from the Debtor: (i) proof of wages for the 6 months prior to the filing of the instant petition; (ii) copies of personal tax returns from 2004 and 2005; (iii) copies of business tax returns from 2004 and 2005; (iv) copies of the Debtor's bank statements from 2006 to the present; (v) a copy of the Debtor's most recent credit report; and (vi) copies of the Debtor's credit card statements for all unsecured obligations as reported on his Schedule F.

39. On January 3, 2008, Debtor's counsel forwarded to the UST the following documentation: proof of wages, bank statements, personal and business tax returns, credit report and several credit card statements.

40. On January 18, 2008, the UST issued a Subpoena pursuant to Fed. R. Bankr. P. 2004 ("Subpoena") requesting the Debtor's appearance at a Rule 2004 Examination which was held on March 28, 2008.

41. On May 2, 2008 the Cyrus trustee provided the UST with financial records pertaining to Cyrus.

42. On July 29, 2008 this Office issued a second Subpoena to the Debtor requesting additional financial records which were provided, in part, on November 11, 2008.

**C.** *The UST's Analysis of Financial Records Pertaining to the Debtor's Business Interests*

<u>***Cyrus***</u>

43. On information and belief, Cyrus was formed by the Debtor in April 1997, and was operated as a jewelry designer and manufacturer.

44. In a sworn affidavit, the Debtor stated under oath the following:

> "Cyrus is a contract jewelry manufacturer. Cyrus receives design orders and materials from its customers. Cyrus then uses the customer's materials to create a finished jewelry product as outlined in the customers' design orders. Cyrus does purchase minimal gold finding used in the process of assembling and finishing customer pieces. Cyrus formerly designed its own jewelry products for which it purchased substantial materials from third party vendors. However, but in 2004/2005 Cyrus changed its operations to mainly use customer materials only." A true and correct copy of the affidavit is attached and marked as Exhibit A.

45. According to the Debtor's Statement of Financial Affairs, Cyrus' business address was 481 Eighth Avenue, Suite 812, New York, New York. According to public records, the address 481 Eighth Avenue, New York, New York, is commonly known as the New Yorker Hotel. Upon information and belief, Mr. Kevin Smith is Executive Vice President & General Manager of the New Yorker Hotel.

46. Based upon the UST's analysis of tax returns filed by Cyrus, between 2001-2004 average cost of sales was approximately 70% of revenue. Therefore, between 2001-2004 the average gross profit margin was approximately 30% during a time when the associated costs included the purchase of substantial materials.

47. According to the Tax Return filed by Cyrus for 2005, sales were reportedly $631,904.00 with cost of goods sold of $1,275,539.00 (approximately 200% or double the earned revenue).

48. The drastic increase in cost of sales was experienced during the time Cyrus was utilizing customer materials and only making minimal purchases.

49. Further, the tax returns reflect that between December 31, 2004 and December 31, 2005 inventory on hand was diminished by $143,700.00 at the same time total liabilities increased by nearly $700,000.00.

50. A review of Cyrus's business records revealed that the company maintained bank accounts at Bank of America (acct. XXXXXX1494), Chase Bank (acct. XXXXXX1965) and HSBC (acct XXXX5616).

51. Bank statements and cancelled checks were reviewed for both the Bank of America account and Chase Bank account for the year 2005.

52. The UST's analysis of these transactions revealed that approximately 27% or more than $1/4$ of monies deposited to the Bank of America and Chase Bank accounts were withdrawn via ATM, checks written to cash or cash withdrawals, and Western Union money transfer transactions.

53. Business records from Cyrus included numerous receipts issued by Western Union which show monies being sent to the Dominican Republic.

54. The beneficiary of these monetary transfers was Bakhtiar Naghshbandi who received $160,801.00 in 2005; $81,290.00 in 2006; and $5,040.00 in 2007.

55. On information and belief, Bakhtiar Naghshbandi is the Debtor's brother.

56. On information and belief, the source of the funds that were sent via Western Union and paid to Bakhtiar Naghshbandi was cash, but include monies from Cyrus, IRMC, and the Debtor.

57. On June 15, 2007, an Order was entered in the United States Bankruptcy Court in the Southern District of New York which authorized the sale of Cyrus' estate assets to Kevin H. Smith for $12,000.00.

58. Upon information and belief, Mr. Smith and the Debtor's wife (Sevil Naghshbandi) formed the corporation, Le Paveh, which operates as a jewelry designer and manufacturer.

59. According to public records, Le Paveh filed for incorporation on June 4, 2007, one month following the conversion of Cyrus.

60. The funds referenced in paragraph 57 ($12,000.00) were paid by monies from Le Paveh.

61. The address for Le Paveh is recorded as 481 Eighth Avenue, New York, New York, or within The New Yorker Hotel.

*Romina*

62. According to testimony provided by the Debtor at the 2004 Examination, Romina was formed for the purpose of jewelry design and has never derived any income from business operations.

63. According to a U.S. Income Tax Return for an S Corporation for the tax year 2004 filed by Romina, this corporation was formed on July 27, 1998 with an address of The New Yorker Hotel, Suite 812.

64. The Debtor is the sole shareholder of this corporation.

65. The 2004 Tax Return filed by Romina reports Gross Revenue of $36,000.00.

66. Schedule L of the 2004 Tax Return indicates that at December 31, 2004 Romina maintained the following assets: cash $10,000.00; inventories $60,500.00; equipment (at cost) $55,418.00.

67. According to testimony provided at the 2004 Examination, the Debtor only had knowledge of certain computer equipment purchased by Romina. He could not identify the assets comprising the $60,500.00 in inventory.

68. According to the 2004 Tax Return, on December 31, 2004 Romina had loans from shareholders in the amount of $71,025.00 which, according to testimony, was due to the Debtor individually, and Cyrus.

69. The present disposition of assets attributable to Romina is unknown as is the current status of operations.

### *IRMC*

70. Upon information and belief, IRMC was incorporated in approximately the year 2000 with the Debtor owning a 60% interest in the corporation and Mr. Taj Hamad owning 40%.

71. The Debtor testified that Mr. Hamad relinquished his ownership in 2003 at which time the Debtor gained a full ownership interest.

72. According to the Debtor, IRMC did not actually begin operating until 2004 and ceased operations in 2006.

73. Upon information and belief, between 2004-2006, IRMC operated as a jewelry contractor between the United States and the Dominican Republic.

74. According to the Debtor's testimony, IRMC did not have any business operations in the United States, but conducted business with a company by the same name, International Resource Marketing Corporation, which was located in the Dominican Republic ("IRMC-DR").

75. The Debtor testified that IRMC-DR was owned by the Debtor and Kevin Smith with an approximate 60%/ 40% ownership split.

76. According to the Debtor's testimony, in 2006 all assets of IRMC-DR were liquidated pursuant to a court order under Dominican law to satisfy employee claims against the company.

77. The Debtor further testified that assets liquidated included jewelry manufacturing equipment exclusively; there were no jewelry or gems on premises to be liquidated.

78. According to the Debtor's testimony, employee claims totaled between $60,000.00 to $100,000.00.

79. Upon liquidation of IRMC-DR, IRMC (the United States Corporation) ceased operations.

80. As evidenced by financial statements prepared on behalf of IRMC, the company had revenue in 2007 totaling $43,995.00 despite testimony to the contrary.

*Integral*

81. According to U.S. Income Tax Returns for the years 2001 through 2005, Integral was an S Corporation formed on August 23, 2001 and operated as a computer services company with an address of 481 Eighth Avenue, Suite 840, New York, NY.

82. The Tax Returns further reflect that Integral was solely owned by the Debtor.

83. The 2005 tax return indicates that it is the "Final Return" filed by Integral.

84. As of December 31, 2005 Integral had no reported assets and liabilities due to the Debtor as sole shareholder of $34,779.00.

*Buildamerica Corp.*

85. The Debtor's ownership interest in Buildamerica Corp. ("Buildamerica") was not reported in the petition and schedules.

86. According to U.S. Income Tax Returns for the years 2002 through 2005, Buildamerica was formed on June 24, 2002 and operated as a Real Estate Developer with an

address of 574 Sketch Place, Ridgefield, New Jersey. This corporation was owned by Dikran N.A. Minassian (25%), Ohanis L. Ohanis (25%), and Hoshyar Naghshbandi (50%).

87. The tax returns indicate that Buildamerica did not generate any income during the years 2002 through 2005 and experienced an aggregate operating loss of ($28,380.00) over the four years.

88. The U.S. Income Tax Return for the year 2005 indicates that it was filed as the company's Final Return. On December 31, 2005 a total of $27,505 was due from Buildamerica to the shareholders of record, although amounts due the individual parties and respective amounts due were not defined.

### *Middle East Alliance for World Peace, Inc.*

89. The Debtor's ownership interest in Middle East Alliance for World Peace, Inc. ("MEAWP") was not reported in the petition and schedules.

90. Financial records pertaining to MEAWP indicate that it is a business wholly owned by the Debtor.

91. Correspondence identifies Mr. Taj Hamad as President of this corporation.

92. According to the U.S. Corporation Tax Returns prepared for the years 2001 through 2005, MEAWP was incorporated on November 2, 2000 as an educational services corporation with an address of 866 U.N. Plaza, Suite 4038, New York, New York. The 2005 U.S. Corporation Income Tax Return was filed as the company's "Final Return".

93. According to the tax returns filed by MEAWP, the company had no earned income for the years 2001-2005 and incurred aggregate operating losses of ($89,627.00).

94. At December 31, 2004, the company had assets valued at $37,849.00 and liabilities totaling $118,738.00.

95.     At December 31, 2005, MEAWP had no remaining assets and had liabilities of $88,627.00 representing amounts due to the Debtor as sole shareholder.

96.     The disposition of the business assets of MEAWP is unknown.

## COUNT ONE

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5)

97.     The UST realleges and incorporates the allegations contained in paragraphs 1 through 96.

98.     The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless the debtor has failed to satisfactorily explain any loss of assets of deficiency of assets to meet the debtor's liabilities.  11 U.S.C. § 727(a)(5).

99.     According to the Petition, sworn to by the Debtor under the penalty of perjury, the Debtor incurred debts of $916,599.76, but has assets of only $6,527.00 which consist of clothes worth $1,000.00, $100.00 in a checking account and a tax refund due to him in the amount of $5,427.00.

100.    The Debtor has failed to adequately explain the loss of these assets and the business records examined by the UST do not provide an explanation to support the loss of assets.

101.    WHEREFORE, the UST respectfully requests that this Court enter judgment in favor of the UST denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(5) and providing for such other relief as is just.

## COUNT TWO

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)

102.    The UST realleges and incorporates the allegations contained in paragraphs 1 through 101.

103. The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless the debtor, with intent to hinder, delay, or defraud a creditor or officer of the estate charged with custody of property, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed – property of the debtor, within one year before the date of the filing of the petition, or property of the estate, or after the date of the filing of the petition. 11 U.S.C. § 727(a)(2)(A) and (B).

104. The Debtor failed to list in the petition and schedules transfers of property within one year before the date of the filing.

105. WHEREFORE, the UST respectfully requests that this Court enter judgment in favor of the UST denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2) and providing for such other relief as is just.

## COUNT THREE

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)

106. The UST realleges and incorporates the allegations contained in paragraphs 1 through 105.

107. The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless the debtor knowingly and fraudulently, in or in connection with the case, has made a false oath. 11 U.S.C. § 727(a)(4).

108. The Debtor has marked each question in his Statement of Financial Affairs, with the exception of question 1, 4, 9, 11 and 18 as "none", and did not report interests in two businesses and certain transfers that were made within two years of the filing of this case.

109. WHEREFORE, the UST respectfully requests that this Court enter judgment in favor of the UST denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4) and providing for such other relief as is just.

## COUNT FOUR

### Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3)

110. The UST realleges and incorporates the allegations contained in paragraphs 1 through 109.

111. 11 U.S.C. § 727(a)(3) provides, in relevant part, that the Court shall grant a discharge, unless "the Debtor has concealed, destroyed, mutilated, falsified or failed to keep or otherwise preserve any recorded information, including books, documents, records, papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such failure to act was justified under all of the circumstances of the case.

112. The Debtor has unjustifiably concealed and failed to keep or preserve sufficient recorded information, including books, documents, records, and papers, from which his financial condition might be ascertained.

113. WHEREFORE, the UST respectfully requests that this Court enter judgment in favor of the UST denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(3) and providing for such other relief as is just.

Dated: January 16, 2009

                                              ROBERTA A. DeANGELIS
                                              ACTING UNITED STATES TRUSTEE
                                              REGION 3

                                              By: */s/ Mitchell Hausman*
                                                  Mitchell Hausman, Trial Attorney